Good morning, Your Honors. My name is Craig Unrath. I represent the People's National Bank. I'll be dividing my time with my partner, Brad Elward, who will speak to you about the motion for equitable relief that we filed. I've been practicing appellate law for 25 years and I have to say that I have never written a brief like this. Claims of deceit, false testimony, things like this. This is not my normal practice. I don't consider myself a bomb thrower. But this is not a normal case. And as I pointed out in the initial brief, you just can't mince words when you're dealing with this case. The case presents a very simple question. How is it that a community bank comes into court on a trial on damages only involving a $150,000 letter of credit and walks out with a $16 million judgment against it? This case was before this court performed. I see that two of the panel members here were on that decision. Did either of you think that this was a multi-million dollar case? The court remanded this for a trial on the letter of credit for $150,000. There was no mention of a pledge agreement, and for good reason, because it had never been pleaded. And as a matter of fact, it still hasn't been pleaded. Now, we deal with a fundamental principle of law. A party cannot have relief under proof without allegations. Now, that's almost a direct quote from this court's 1993 decision, but I traced that back 200 years, and it all boils down to a very simple principle. Both parties must know in advance what issues will be tried. Now, that's due process. That's something that is inherent in every aspect of our judicial system, but more than that, it's common sense. The complaint contained no allegations the plaintiffs were deprived of a right to retake their business, no allegations of lost profits and earnings, no allegations that they suffered any monetary damages other than those arising directly out of the letter of credit. And yet, during their opening statement for the very first time, we heard about the pledge agreement. Opening statement. It's not included in any prior pleadings. And they claim to have suffered millions of dollars in damages. Now, they argue that their general prayer for relief is sufficient to provide notice of claims to lost profits. In support, they cited the Illinois Supreme Court's decision in Van Zanten for the proposition that relief may be granted under the general prayer for relief. And this is a quote. When it is consistent with the facts alleged and proved and provided that it does not take the defendant by surprise. Well, that's our entire case here. The claim for damages, the award of damages, bear absolutely no resemblance whatsoever to the claim actually filed in this case. Now, the trial court ruled that because the bank did not engage in discovery, it could not claim surprise. But the court was missing something there. We're talking about due process. We're talking about a duty to advise the other party of the nature of their claim. A failure to conduct discovery does not relieve a plaintiff of its fundamental duty to put the defendant on notice of the nature of their claim. Moreover, and I think that this is also important here, how can a bank be faulted for not conducting discovery on a claim that was never pleaded? There's no causal connection between the letter of credit and the damages for a lost opportunity to retake a business. Well, if we had taken depositions, what would we have asked based on this complaint? We would have asked questions about the proposed misallocation of funds under the letter of credit. Would we have said, by the way, were you deprived of an opportunity to retake your business? Is that something that would come out in a deposition based on this complaint? Is there an interrogatory that says, what is the real claim here? Is there another claim out there for millions of dollars in damages that you haven't pleaded? Of course not. That's ridiculous. It almost looks like it's a game of hide-and-seek. The plaintiff puts out a complaint and it's up to the defendant to go out searching for what the real complaint is. That makes no sense. The rule is you cannot obtain relief without allegations. And when you look at the pretrial memoranda, now you take this a step further. Now it goes into not only just a poorly pleaded complaint, now we're talking about deception. That pretrial memoranda does not mention anything about a duty to inform the Newmans of an Amigo's default. The complaint doesn't mention anything about the key element in their case, proximate causation, which is, did the bank have a duty and breached the duty to provide the Newmans with the Amigo's confidential profit and loss statements? There's nothing in the pretrial memoranda about that. But here's the worst part of it. Their exhibit list. It contains every conceivable agreement, contract, memorandum of understanding. We've got the October agreement. It has every conceivable document that could be in any way relevant to this case. But it's missing one thing. The pledge agreement. They left that one out. Now that's just wrong. You just cannot claim that that's an oversight. Now the Newmans would have this court believe that the damages for lost earnings were the natural result of the purported misallocation of funds under the letter of credit. But they have to prove that they are entitled to those damages. Now keep in mind, we're at trial. Liability's already been established. We're at trial on damages only. But the pledge agreement's never been mentioned. There's never been a duty to inform the Newmans of an Amigo's default. Don't they have to prove that such a duty exists? What about proxima causation? That the failure to provide them notice of an Amigo's default, the failure to provide them with the Amigo's confidential profit and loss statements caused them to be deprived of an opportunity to retake their business. All of that's missing. And of course it should be missing because this was supposed to be a trial on damages only. Somewhere along the line it was transformed into a trial on liability, not just damages. Now the bank, nope. Then we come down to the actual damages themselves. The evidence relating to damages was entirely speculative. We found that in our motion for equitable relief, we found substantiation that they had destroyed their tax records, the records of their income. They destroyed them no later than 2011. Here's a claim that for lost earnings and profits, and all this time that this was pending, they decided that they would destroy their own tax records. Does that make sense? Then we have issues of false testimony. We have an opinion witness that was actually an employee of the law firm, the plaintiff's firm. There was no expert testimony put forward on that. But in the end it all comes down to the pleadings. If the bank's refusal to turn over information was the reason why the Newmans could not retake the business, shouldn't they have alleged that in their complaint? Was there a motion to strike, a motion to amend or something? Any argument about the complaint? Absolutely. The complaint itself, when we walked in at trial, was limited merely to the letter of credit. So it was really in the midst of trial that we first learned about this entire pledge agreement. So no, we did not have any motion to strike the complaint. What we did do was we had a continuing objection to all evidence of lost profits, lost earnings, lost value. Opposing counsel consented to that and the judge agreed. Now you do talk about some false testimony. Was there any objections or anything brought out to prove that? Is this something that happened after trial that you're saying is false or during trial? Was there any cross-examination or anything? It was discovered after trial that the testimony was false. So it's not in the record that we're looking at? It's in the motion for equitable relief. It's in a motion? Yes. Okay. Filed after trial, yes. There are a number of things about this case that just make no sense. Look at the pledge agreement itself. The bank had no stake in that agreement. The bank was the escrowee. And under the plain terms of that agreement, it was the Newmans who had the duty to inform the bank of an amigo's default. Not the other way around. There's also a hold harmless provision in the pledge agreement that in the case of any dispute involving the pledge agreement that the bank would be held harmless. There's another aspect to this that I think, looking at the larger picture, look at this situation where if all of this had been pleaded properly and if the Newmans had taken over, exercised their rights under the pledge agreement, they would have received 1,000 shares, all the shares in the New Group Corporation, but they would have also incurred $4 million in debt. Were they able to handle that debt? Well, I tell you, if this claim had been properly pled, certainly that would have been an issue at trial. But it wasn't properly pled. One thing I'd also like to point out about my brief is the conclusion, the prayer for relief. I've never written anything like it in my life. Typical prayer for relief is we ask the court to reverse, we ask the court to affirm. Here I think we went on for about a page and a half. And that just deals with the complexity of the case. We had to cover each and every issue. In the end, really what we're looking for is a fair trial, Your Honor. All we want is a properly pled complaint that alleges the claim that constitutes 99% of the plaintiff's damages, and we'd like to have a fair trial on that. We'd like to have notice. We'd like to do discovery on that. But we were deprived of that. Was there any discovery done in this case by the defendants? We didn't engage in discovery because the complaint merely says... I'm asking the question, the question, was there any? And the answer is no. Oh, no, there was some discovery. Oh, some discovery? Oh, absolutely. Did they take any depots? No, not that I'm aware of. Interrogatories? No, there were no interrogatories, but we did turn over, I believe, 2,100 documents to Plaintiff's Counsel. And then sent them a letter saying, look, if there are any other documents that you need or want, you're welcome to stop by the bank and we will get them for you. Every conceivable document that we could see that was relevant to the letter of credit was turned over. Did we ask for discovery? No, we did not. And the reason is that there was no purpose to it. There was no reason to ask for discovery when the letter of credit was attached to the complaint. We had all the evidence we needed. I want to make sure that I reserve time for my partner, Brad Olu. I respectfully ask the Court to reverse the judgment in this case and allow us a chance to retry this case. Thank you very much. Thank you and good morning. Brad Elwood on behalf of the People's Bank. I'm going to talk for a few minutes about the equitable relief motion. And I'm just really going to jump to the chase on this. We presented evidence in the motion for equitable relief that we thought demonstrated clear fraud on the court and false testimony that took place during the trial. We sought to offer and introduce tax records of the plaintiffs and of the Newmans and of their business that would have definitively demonstrated that their testimony was false on three particular grounds. And I'll briefly touch on that. During trial, the witness Hall testified that each of the Newmans made $104,000 per year every year. The tax records show that's definitively wrong. Terry Newman testified that the business was always profitable from day one. The tax records show that that was false. And third, Terry Newman testified that the business entities, the Taco John's businesses, had grossed $3 million plus in gross sales in the year when the store was sold. Again, the tax records show that that is false. We brought this to the attention of the court in our motion for equitable relief, which was filed shortly after the post-trial motion, and the court denied that. We believe that the circuit court's ruling, given those allegations of fraud on the court and false testimony, was a clear abuse of discretion, whether viewing the matter, the equitable relief motion, on its own or viewing it as a supplement to the post-trial motion. We addressed this in our brief. We cited the Inmate Wolf case, and the Newmans have never distinguished that case. I believe that case is exactly on point, and it controls the issue of, first, did the circuit court have jurisdiction to consider that motion? And then, second, asking whether or not the circuit court made a ruling on the merits of the motion for equitable relief. It didn't. What it did is it denied the motion as untimely. But it did so based on the allegations or the arguments that we think were basically trumped up by the Newmans with respect to the purported discovery violations that the bank did in the underlying case. And I just want to point out for a minute that the bank was at all times in compliance with the discovery. When you look back over the record, you won't see a motion to compel. You won't see any arguments that the bank did not produce any of the documents that were requested by the Newmans. You'll not see a motion to compel. You'll not see a 201-K letter or any records to it. The bank did not conceal any documents from the Newmans. And I think the interesting thing here is what Mr. Unright pointed out. The tax records that we're talking about were not the bank's tax records. They were the Newmans' tax records. When did you get those? Pardon me? When were those gotten after the trial? The record does not indicate when the bank had the tax records, but even if they were... They were not presented at trial in any way? No, they were not. No, they were not. These are the Newmans' own tax records that were destroyed according to the affidavit of Mr. Rich that page exhibit 90 of the record in 2011. And so I think that leads us to a question that relates to Mr. Unright's remarks. If the pledge agreement and those claims were always a part of the underlying claim, why did they allow evidence of the tax records which showed lost wages, lost profits, et cetera, to be destroyed in 2011? It sounds like spoliation. I think what's more likely the case is that the pledge agreement and the arguments related to it were never part of the original claim. It was always a claim on the letter of credit. Now, the other thing I want to point out is when the bank did make the production that Mr. Unright talked about a few minutes ago and produced what it believed to be all relevant documents, this had occurred at a time that the pretrial memorandum had been provided by the Newmans that specifically listed the damages stemming from the letter of credit at $150,000 and it did mention additional damages, but interest, punitive damages, emotional distress, costs, and suit of attorney's fees. You don't see any reference to lost wages, lost profits, anything of that nature as they were claiming. And as Mr. Unright said, the bank offered them an opportunity to come review additional documents that the bank didn't feel were relevant and they turned it down. And I think what this leaves us in is this position. The motion for equitable relief in this case, Your Honors, highlights exactly why we don't allow parties to do an ambush of the other party at trial. The Newmans' surprise tactics in this case put the bank in a position where the bank was unable to mount a defensive trial against the false evidence. Now, remember, the law, as we cited in our brief, a party is not required to anticipate false evidence as it appears in a trial. And I want you to also recall that the tax records that we've discussed in this case, even if they were available, were not relevant until the false testimony and deceptive testimony arose during the trial. It's the bank's position that it did not have an opportunity to do an adequate cross-examination of the witnesses on the tax records because the Newmans had hidden and concealed the true nature of their claims and also because the circuit court had wrongly denied the defense counsel's opportunity to reopen the evidence or to basically continue the case at the close of the plaintiff's case in chief to develop further evidence on the issue of damages. Now, on this point, we urge you to remand and send this matter back as an alternative, I guess, to Mr. Ironhouse, for a full hearing on the matters raised in the equitable relief motion. We've made a number of arguments, and we believe the tax records are definitive. Tax records, as we all know from our own, are signed under the penalty of perjury. They're the best evidence of what the Newmans earned and what their business profits were and their losses were during this time. But the trial court not only said, I'm not going to look at those, it said, take those out of my courtroom. And we cited the provision from the hearing in the record where the court made that remark. These are significant allegations, and the case law says when you bring new evidence to a court in a post-trial motion following a non-jury trial, that if there's evidence of fraud and false testimony, that a new trial should be awarded. Well, we were trying to get step one, which was to allow us to have a hearing where we could actually bring that evidence to the court's attention, and the trial court refused that opportunity to the bank. And we're asking for that opportunity as an alternative to Mr. Ironhouse's arguments. And I see I have just a minute. I want to touch for a second on the December 2015 arguments that we make. One of the arguments in the brief that we've raised relates to Stevens and Thompson. And it talks about the rulings that came out of November 2015. Thank you. Thank you. Counsel? Good morning. May it please the Court. My name is Scott Hendricks, and I represent the plaintiffs in the underlying case, Dan Stevens and Neal Thompson. I just want to address a couple of points with regard to the judgment that was rendered in favor of my clients and against People's National Bank. They raised several issues in their brief, one of them being that the Newmans can't file a motion for summary judgment for my client's benefit and that the court doesn't have subject matter jurisdiction to grant relief for something that's not paid for in a complaint. But the answer to that is this was an issue that was before the court for 15 years. That rent was due my client. It was just a matter of who owed that rent to my client. I believe both of the parties owe that rent to my client. I can only cover once, but I believe they both are obligated. One, the Newmans are obligated under the lease agreement, and two, People's National Bank are obligated under the October 17, 2001 agreement in which they agreed to make sure my clients were paid their rent. The other argument or position they take is the party cannot amend a complaint to add a new party after judgment has been entered, which in this case I asked the court for leave of court to amend my complaint to add a third-party beneficiary complaint against People's National Bank, which the court granted. The point I want to make here, along with the point with regard to the motion for summary judgment, is the bank never objected. Actually, the docket entry in open court, the attorney for People's National Bank stated to the court that he had no objection to my amendment to the complaint because the court had already ruled that the bank was responsible for conversion of those funds that were to go to my client. So there was no doubt in anybody's mind that my clients were entitled to payment of the amount of rent that was due them. I think it was just a matter of who and when that judgment would be entered against or in their favor. I also filed that motion for leave to amend my complaint under abundance of caution because, as the court will discuss in the second appeal here today, that my clients were entitled to those rent payments from the bank. Finally, I would indicate that they said there was no evidence that Stevens was a third-party beneficiary to this October 17, 2001 agreement, but they were clearly identified by name in that agreement. And they're a third-party intended beneficiary because they are identified by name. It's an agreement by two other individuals to make sure that my clients get paid the rent. So my clients were the intended beneficiaries of that agreement. And for those reasons, I've asked this court to affirm the judgment against People's National Bank in favor of my client Dan Stevens and Neal Thompson. Thank you. May it please the Court, I'm Bill Tepela. I'm here on behalf of the appellees Bob and Terry Newman. I have Dan Jones of my office with me today. I want to start my discussion by addressing with the Court the notion that People's National Bank continues to rely upon a notion that there was fraudulent testimony. It is a position rejected by the trial court on multiple occasions, and it's a position that we categorically reject and deny on this appeal. And the first place that I would ask this court to look to evaluate that issue is at the record before you because it puts the lie to this allegation of fraud or misrepresented facts. With regards to the damages and the testimony of damages that occurred at trial, it came from two sources. But all of it was based upon documents provided to us by the bank. So when Terry Newman testified that with all eight stores open, the businesses generated $3 million per year in revenue, that was supported in the bank documents. Look at Exhibit 42, which though not in evidence, is of record before this court, and it demonstrates what the business generated with five stores. The math is simple. They averaged $374,000 per store. If you add three more stores, they're in excess of $3 million. Look at Exhibit 14. And let me comment on this too. Exhibit 42, months, seven months before the Newmans sold it. And in that document, the bank raves about what great managers the Newmans are, how talented they are, the national awards they had won from Taco John's franchises. Then you look at Exhibit 14, the document filed by Amigo Foods, months and months after the Newmans had sold the store, and you do the math again. And when you rely upon those documents, you arrive at the same figure, that these stores, based on the bank documents and Terry Newman's testimony, were generating about $3 million per year. That is what is of record. When you look at this lost wage claim, they say, oh, they didn't earn $104,000 a year. Well, look at Exhibit 42. Because Exhibit 42 says the owners were salaried a salary of $104,000 a year. I interpreted that and made arguments based upon an assumption that each of the owners earned that salary. In the bank's closing argument, they did not disagree. They didn't cross-examine on that issue. They didn't challenge that evidence. And they didn't make a counter-argument in their closing argument. In their timely filed post-trial motion, they never raised the issue. In fact, the post-trial motion filed by counsel before you today stated that,  acknowledging that that's what the language said. The trial court agreed. Though that document did not go directly into evidence at trial, it was up on the screen. The trial court saw that language and interpreted it the same way I had and the same way they did. I want to touch on this discovery issue. Let's be crystal clear. No discovery of any kind done by the bank in this case. None. No interrogatory. Not a single deposition. No inquiry at all. And counsel raises the question, well, what kind of interrogatory would we ask? I would recommend he review Supreme Court Rule 213 and ask that question because it would have required us to have disclosed not only the witnesses who were going to testify after the damages in this case, but it would have compelled us to have disclosed the nature of that testimony. So that would be a good starting place with regards to the discovery they should have sought in this case. I want to also note the discovery violation. I have never seen a trial court order in my 25 years of practice wherein the conduct of a party was called by the trial court outrageous. And that's what the trial court did in this case with regards to the bank's conduct and discovery. We did ask for every file, every piece of paper they had with regards to the loans at issue. We then confirmed that they had produced that. There was an email exchange read to Judge Falderson in the record. She found a discovery violation based on the fact they had represented we had everything. The bank can't have it both ways. They can't claim that these tax returns are relevant to the issues they now raise and at the same time claim that they weren't the subject of the proper discovery request we had made. They didn't disclose them. It was outrageous that they did not disclose them. And it was proper that Judge Falderson entered an order denying that those documents tended for the first time in a clear violation of the rules of discovery, which she found, for the first time nine months after the close of evidence and months after all deadlines. And they got two extensions for post-trial motions. But months after the deadline, not just for the post-trial motion, but for responses and replies. They never raised it. How long were those documents in their possession? Since 2000. At least 2000. These were documents submitted in support of the loan applications. As Judge Falderson found, these documents were in their possession for 15 years. They claimed surprise at the pledge agreement. It is remarkable to me that a document that they produced in discovery and then stipulated to that tribe, be mindful, no contemporaneous objection with regards to the pledge agreement going into evidence. I want to touch very briefly on surprise. The cases that we've cited all demonstrate that you cannot read out of our pleadings a general prayer for relief. It was there. But more importantly than that, they asked where in the complaint were the allegations for lost profits, lost income. It's in the caption. We clearly pled claims for breach of fiduciary duty. We clearly pled claims for conversion. And we clearly asked for such other and further relief as is available under those claims. That was in addition to specific prayers for relief. It cannot be read out of the pleadings, particularly not in light of the plain language. And I would call the Court's attention to M.B. Financial and Heritage case and the Fritchell v. LaPlante case in our pleadings. All of those cases demonstrated that where the theory of the case is pled, the damages available under those theories are allowable. And as we've addressed very clearly in our brief, and I would ask the Court to consider, surprise is a prerequisite under 604 to protection by the trial court or this court for that matter. The prerequisite to a finding of surprise is due diligence on the part of the bank. In a complaint that for 15 years, 13, 14 years, dealt with breach of fiduciary duty and conversion, and in a complaint that for the last two years dealt solely on the issue of damages available under those claims, they cannot be said to have exercised due diligence by never propounding a Rule 213 interrogatory, never propounding any interrogatory, no request to produce, and by never taking a single deposition in the case. The last point is I'm sure on time. 103B, 103B, 103B. A contemporaneous objection at trial is mandatory, and it's mandatory for a reason. Had they raised an issue with regards to the speculative nature of evidence at trial, it would have afforded me the opportunity to lay additional foundation. It would have afforded the trial court an opportunity to have acted on that information. Had they raised an issue with regards to foundation, it would have afforded me the opportunity at trial to have laid further foundation and the trial court the opportunity to rule. That's why the waiver rule exists. If you don't raise a contemporaneous objection, the issues are gone. And in this case, during the entirety of Riffall's testimony, there was one objection based upon the scope of damages. There was no other objection made and no other objection preserved for this appeal. During the entirety of Terry Newman's testimony, the only objection before you is, again, this issue with regards to the scope of damages. Everything else has been waived. It simply wasn't preserved. It did not afford me the opportunity to address it further at trial because they accepted that evidence. Can you point me to anything in the pretrial memo that would have put them on notice that the pledge document was at issue as far as lost profits and opportunity? Yeah. I can't off the top of my head point to anything in the pretrial memorandum. What I can say, Your Honor, with regards to the pretrial memorandum, this has suddenly become a voting issue. I would remind the Court, they've not provided you with a single statutory citation, a single rule, a single case where the pretrial memorandum in some ways governs the conduct of the trial or the scope of evidence. I'm aware of that. It's more of a federal procedural. Right. In the setting of the pretrial memorandum. But it also is used to narrow the issues and guide. For the trial court, and I think that's appropriate, and with regards to the trial court, I would simply remind the Justices that on five separate occasions the trial court had an opportunity to rule on this issue of surprise. In their brief, they cite one occasion in what I believe is a misrepresentation of the record, but there were actually five occasions for careful analysis of that issue. And the judge properly, and for proper reasons, I believe, determined that, in fact, there was no basis for surprise. Understand that with regards to all of the exhibits, including the pledge agreement that we admitted in trial, with the exception of some graphic demonstrative type evidence that Mr. Hall created, all of the documents were provided by the bank. I mean, these are not documents that came mysteriously out of terrier Bob Newman's files and that the bank sought for the first time at trial. We had sworn testimony from the bank's representative that, in fact, they had produced to us everything, which, again, as I noted earlier, you can't say that these documents are suddenly relevant post-trial, but they claim that they weren't relevant enough to have produced in response to properly propounded written discovery pre-trial. As you well know, there are rules on that. There are rules on that, and Judge Salverson properly enforced those rules. I will also say, during the entirety of the trial, never an objection based upon the absence of a document or the absence of any statement in our trial memorandum. That never appeared by way of an objection at trial. In fact, and I urge the Court to look, in our brief we detail the 13 objections raised at trial. Three of those were granted by the trial, sustained by the trial court. Three of those were relative to this scope of the pleadings and damages issue that I've addressed, and the rest were on reading and things of that nature, but nothing on the trial memorandum. That is a creation, as the bank has attempted to do on this appeal, create this false narrative about the complaint being based on the pledge agreement, a false narrative about fraudulent testimony, and a false narrative that either the trial memorandum was at issue or that they in any way preserved that issue for further consideration at the appellate level. That simply did not happen at any time in the trial court. The last issue I would encourage, as I'm running out of time, is again, Exhibit 42 is kind of an oddity on this appeal in that it was not introduced into evidence at trial. Consistent with 702, it was utilized by an expert as a basis for testimony. With that said, it appears frequently throughout the record on appeal in that case. I encourage the Justice to consider it, because it waxes eloquently about what great people the Newmans were. It talks about their acumen as business leaders, how they had never been delinquent on a payment in the entirety of their relationship with the bank. It waxes about the awards they won nationally in the operation of taco franchises. Did you just say it wasn't entered as evidence? It was not entered as evidence in the trial. It came into the record on appeal principally through post-trial motions. As I said, it is in the record on appeal before you. However, it was not considered by the trial court. It was not considered by the trial court, other than as it was discussed by the witness as he was offering his testimony. That's correct. So it's dehurst the record. I'm sorry? It's dehurst the record. Yes, it is not a part of the trial record. Yes. Yes. And with that, I would say briefly in closing that this verdict should be sustained. It was based upon the application of the rules. And it is the application of those rules, not the subjective opinions of a litigant that determine what is fair and what is just in our system of justice. In this case, one side played by the rules and another side did not. The bank did not. And for that reason, the bases for their appeal should be rejected. The trial court should be affirmed. And I thank you for your patience. Thank you. Thank you, Your Honors. Just briefly, you mentioned that we have a narrative of false claim that this case is based on the pledge agreement. Well, if that's not true, let's take the pledge agreement out of this case. What's left? Do they get any damages for lost profits, lost earnings, lost value on their property? If we eliminate the pledge agreement entirely from this case, if it is really not based on that, then I guess we're just left with the letter of credit, which is exactly what they pledged, which is exactly what we anticipated to be the trial on damages for. Now, it's important to point out that we provided 2,100 documents involving every conceivable relevant documents to the loans at issue that were in any way related to the letter of credit. Now, they claim a fiduciary duty under the letter of credit, that we had a duty to properly allocate the funds, and they claim that we misallocated those funds. The point is this. A fiduciary duty as to one instrument does not create a fiduciary duty for every conceivable contract that's been issued over 20 years. Here we're in a situation where they've alleged a claim based solely on the letter of credit, and then they're holding us at fault because we didn't dig around to go through each and every one of the agreements and say, do you have a claim about this contract? How about this agreement here? Do you have a claim about this one? Is that how we work our system of justice here? It comes right back to the fundamental rule of law, that we've been saying all along, is that you have to plead your claim. You have to give notice to the other side as to what your claim is all about. Now, he claims that the pretrial memorandum, which said there's no law saying that a failure to accurately describe your claim should be a cause of concern. Your Honor, it's a court order. The trial court ordered them to describe the nature of their case. Now, don't you think that if they're going to be asking for millions of dollars even beyond the letter of credit, that that might show up somewhere in the nature of the case? The court asked them to describe the cause of action, and here's what they said. They said the amount of $150,000 plus interest, period of damage, emotional distress damages. That's something new. And costs of suit, including attorney's fees. I don't see a pledge agreement on here. They completely did everything they could to conceal the nature of their claim, and it really comes down to a basic question. If you have a claim for millions of dollars in lost earnings, why don't you plead that? Why don't you put that in your complaint? And if so, is this the way our system of justice works? Now, they also claim that there's no due diligence. And again, you must put us on notice of the nature of your claim.  We're not out there to look over every document and ask, do you have a claim on this or do you have a claim on that? They say that the fraudulent testimony, it was only after trial when we had a chance to review the testimony, to review the documents in our possession, that we had a chance to find out the veracity of some of the testimony that was made. And when you look at the Newman's own tax records, this isn't our records, this is their own records, the records they destroyed, you'll find that they didn't tell the truth. And that's, I don't see how you can get around that. Now, discovery violations. They claim that we violated discovery. They never filed a motion to compel. We supplied them with every conceivable document and then welcomed them to come to the bank if there were any other documents they wanted to see. Did they ever complain? Did they ever file an email complaining to us that they ever filed a motion to compel? No, they did not. In the end, this case boils down to a simple matter of pleading. You have to tell us what the case is about so that we can prepare for it. And I can tell you, had we had any notion whatsoever that this case would involve lost profits, we would have conducted discovery. Thank you, Your Honor. We ask you to reverse. Thank you. Court will take the matter into consideration and issue a opinion in due course.